IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAJENDRA SINGH, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05 C 3854 |
| | ) Judge Virginia M. Kendall |
| HOLY CROSS HOSPITAL, | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Gajendra Singh ("Plaintiff" or "Singh"), *pro se*, sued Holy Cross Hospital ("Defendant" or "HCH") for impermissibly failing to hire or promote him on the basis of his race, color, and national origin in violation of Title VII. Singh was not offered full-time employment with HCH after applying to be a full-time employee when he was working part-time at HCH. Plaintiff and Defendant have cross-moved for summary judgment. Because Plaintiff cannot establish a *prima facie* case of discrimination or present evidence that HCH's proffered reasons for failing to hire him for a full-time position were a pretext for discrimination, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

**Facts**

Plaintiff, a native of India, attended college and medical school in India. Defendant's Statement of Undisputed Material Facts (hereafter "Def. 56.1 Facts") at ¶2. He received his Bachelor of Medicine and Bachelor of Surgery degrees in 1995 from the University of Rajasthan in Jaipur, India. *Id.* Plaintiff's Response and Objection on Defendant's Statement of Undisputed Facts (hereafter "Pltf. 56.1 Resp.") at ¶ 2. Singh moved to the United States from India in 2002. Def. 56.1

Facts at ¶ 2. Plaintiff became a registered Surgical Assistant ("SA") in the United States in 2003. *Id.* at ¶ 4.

Plaintiff applied for a position at HCH in December 2003. *Id.* at ¶ 5. Plaintiff had experience as a result of his prior medical training, but had no prior experience working as an SA. Pltf. 56.1 Resp. at ¶ 6. Plaintiff interviewed at HCH with Ruth Zych ("Zych"), the Director of Surgical Services. Def. 56.1 at ¶ 7. During the interview, Plaintiff informed Zych that he wanted to obtain a full-time SA position; at the time he applied, Singh also worked part-time as a research assistant at the University of Illinois at Chicago. *Id.* at ¶ 5, 7.

Zych hired Plaintiff as a Registry Surgical Assistant ("RSA") on a part-time basis, while Plaintiff retained his work as a research assistant at the University of Illinois as well. Pltf. Dep. at 48. As an RSA, Zych was Plaintiff's direct supervisor. Def. 56.1 Facts at ¶ 9. RSAs perform the same duties as SAs, including ensuring that the operating room is sterile, assisting with the placement of surgical sponges and retractors, and suturing. Zych Decl., Def. Ex. 4, at ¶ 5. SAs and RSAs both work under the direct supervision of the operating surgeon. RSAs, however, are not full-time employees, are paid by the hour, and do not receive employment benefits. *Id.*

Plaintiff began work as a part-time RSA at HCH in January 2004. Four days after starting at HCH, Plaintiff resigned from his position with the University of Illinois and asked Zych to be transferred to a full-time SA position at HCH. Def. 56.1 Facts at ¶¶ 31-32. At the time he made his request, there were no full-time SA positions available at HCH. Zych told Singh that she would consider him if any such positions became available. Zych Decl. at ¶ 23.

*Plaintiff Begins work at HCH*

When Plaintiff started work at HCH, he attended the required general employee orientation conducted by human resources and signed forms confirming that he had attended the training and received the harassment and discrimination policy. Def. 56.1 Facts at ¶¶ 11-14; Pltf. Dep., Def. Ex. 4, at 77-79. HCH also requires new RSA employees to complete a more detailed orientation specific to the Department of Surgical Services ("DSS"). Def. 56.1 at ¶¶ 15-16. The orientation includes a checklist to be completed by the new employee and his or her designated "preceptor." *Id.* at ¶ 17. HCH assigned Edguardo Arzadon ("Arzadon"), a full-time SA, to be Singh's preceptor. *Id.* at ¶ 18. On the first day of the orientation, Singh completed the first three items out of fifteen items on the DSS checklist; after the first day, however, Singh did not complete the remaining tasks or ask Arzadon to sign off on any completed orientation tasks. *Id.* at ¶ 19. Among the uncompleted tasks were the "Departmental Policy & Procedure Manual Review," the "Departmental Safety Protocol Review," the "Departmental Infection Control Guidelines Review." Def. Ex. 4 at Ex. 11.

The first week Plaintiff began work at HCH, staff members working with him voiced concerns to Zych. Def. 56.1 Facts at ¶ 22. Zych received feedback that Singh did not appear to have the experience necessary to be an SA, lacked initiative, did not appear to understand sterility techniques and operating room procedure, and was not performing his duties during surgery. Def. 56.1 Facts at ¶¶ 22-23. Zych met with Singh in early March to discuss his progress; Singh believed that he performed well in his position but did not agree with the chain of command in the Operating Room. He also told Zych that he would take direction only from her. Def. 56.1 Facts at ¶ 26, Pltf. Dep. at 111.

Also in March, Zych asked Singh's colleagues to evaluate him as part of his initial performance review. Def. 56.1 Facts at ¶ 27. While the evaluations praised Singh's work directly with patients, the evaluations all raised concerns about his knowledge of operating room procedure and terms, his sterility techniques, his ability to work respectfully with his coworkers, and his ability to anticipate the needs of the surgical team in the operating room. See. Def. Ex. 4, Dep. Ex. 13. Singh completed his self-evaluation with an overall rating of "4," the highest rating. *Id.*

*Plaintiff Seeks Full-Time Employment*

In March 2004, a full-time SA position became available. Def. 56.1 Facts at ¶ 33; Pltf. 56.1 Resp. at ¶ 33. Zych left a note on Singh's locker at work stating that she would be interviewing candidates later that week. Def. 56.1 Facts at ¶ 34; Pltf. 56.1 Resp. at ¶ 34. Singh told Zych he was interested in the position. Def. 56.1 Facts at ¶ 35. When referred to the human resources department, Plaintiff learned that HCH was considering several candidates, both internal and external. Def. 56.1 Facts at ¶ 35. Plaintiff was shocked to learn this because he believed that Zych had promised the full-time SA position to him. Pltf. 56.1 Resp. at ¶¶ 33-35.

Approximately one week after he applied for the position, Zych told Singh that she had interviewed an outside candidate, Jack Adesso ("Adesso"), and believed he was extremely qualified. Def. 56.1 Facts at ¶ 36. Adesso had thirty-one years of experience as a full-time SA, including the Chief SA at a hospital in Norfolk, Virginia. Zych Decl. at ¶ 33. Zych was also impressed during the interview with Adesso's personality and skills. *Id.* Before offering the position to Adesso, Zych offered to allow Singh to share the SA position with Adesso in order to evaluate the performance of both candidates and decide after one month which of the two candidates she would hire full-time. Def. 56.1 Facts at ¶ 37; Pltf. Dep. at 131. Plaintiff declined the offer to split the position with

4

Adesso, stating that he wanted only full-time employment. Def. 56.1 Facts at ¶ 38. After Singh declined the offer to job-share, Zych offered the full-time position to Adesso.

*Plaintiff Seeks "Call" Employment*

In addition to seeking full-time employment as an SA, Singh sought additional work as a "call" employee. Call employees work additional hours beyond the rotating eight-hour day. Def. 56.1 Facts at ¶ 39. Only one SA works "call" at a time and must be able to work independently during that period. *Id.* at ¶ 40. Zych did not allow persons to take "call" unless she felt they could work independently. *Id.* at ¶ 41. Based on Singh's limited experience and the reviews she received from his coworkers, Zych did not believe that Singh could work independently. *Id.* at ¶ 43. In late May, Singh asked Zych why he had not received call work in April and May 2004. *Id.* at ¶ 42. Zych explained that she did not want him to take "call" work until he completed orientation and received additional performance evaluations. *Id.* at ¶ 44. Hospital records from the period show that Christina Repka ("Repka") received several shifts of call work during the period. Repka is a white surgical technician and one of the authors of the negative peer reviews of Plaintiff.

On May 28, 2004, Singh voluntarily resigned from HCH by letter, without giving notice to Zych or any other supervisor. *Id.* at ¶ 47. He filed his charge with the EEOC on July 1, 2004, and the EEOC issued his Notice of Right to Sue on March 31, 2005. Plaintiff received the notice on April 7, 2004 and timely commenced this suit for discrimination on the basis of race, national origin, and color on June 30, 2005 for damages totaling $25,020,000. Complaint at 5-6.[1]

---

[1] To the extent Singh now pleads via his response to Defendant's Motion for Summary Judgment additional counts of constructive discharge, negligence for a needle prick, perjury on the part of HCH employees, or breach of contract, these counts are not properly before the Court. "A plaintiff may not amend his complaint through arguments in his brief in opposition to summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). This Title VII suit is nearly two years old. Plaintiff had his opportunity to amend his Complaint to add new counts but did not do so.

**Legal Standard**

Summary judgment is appropriate where there is no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the non-moving party cannot rest on its pleadings, but must use evidentiary tools - depositions, answers to interrogatories, and affidavits that are part of the record - to show that a genuine issue of material fact remains justifying trial. *Id.* at 324. A material fact is a fact that is outcome-determinative under the governing law. *See Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). The court must construe all facts in a light most favorable to the non-moving party and must view all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago,* 267 F.3d 723, 729 (7th Cir. 2001).

In analyzing the facts for the purposes of summary judgment, the Court will "limit its analysis of the facts . . . to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). An adequate

rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

## Discussion

### *Direct Method*

There are two methods by which to show discrimination on the basis of a protected class: (i) the "direct method," whereby the plaintiff shows factual evidence of the defendant's intent to discriminate, or (ii) the indirect, "burden-shifting" method articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). A plaintiff may show two kinds of permissive evidence under the "direct method" of proof: (i) so-called "direct evidence" of discriminatory intent; or (ii) circumstantial evidence suggesting discriminatory intent. *See Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005). "Direct evidence" of discrimination is evidence which, if believed by the trier of fact, "will prove the particular fact in question without reliance on inference or presumption." *Miller v. Borden, Inc.* 168 F.3d 308, 312 (7th Cir. 1999); *accord Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Direct evidence claims are rare, because they essentially require an admission by the decision-maker that he acted based upon the prohibited animus. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003).

Plaintiffs more commonly use circumstantial evidence to show discrimination under the direct method. The plaintiff will use evidence to create a "convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision maker." *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006), *quoting Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Bits and pieces suggesting discriminatory intent, including statistical

evidence that employees without the discriminatory characteristic received systematically better treatment, constitute circumstantial evidence. *See Rudin v. Lincoln Land Comm. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005), *citing Troupe v. May Dept. Stores*, 20 F.3d 734, 736 (7th Cir. 1994). That circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003); *see also Cerutti*, 349 F.3d at 1061.

Singh states in his Motion for Summary Judgment that he can establish the *prima facie* elements of a discrimination case without presenting any direct evidence of discrimination. Therefore, the Court limits its analysis to the *prima facie* elements under the indirect method.

### *Indirect Method*

When a plaintiff lacks direct evidence of discriminatory motive, courts apply the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. at 802-04. Under the "indirect method" framework established by the Supreme Court in *McDonnell Douglas*, Singh may defeat summary judgment via indirect evidence if he can establish a *prima facie* case of age discrimination by showing that: (1) he belongs to a protected class; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably by the employer than he was. *See Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 750-51 (7th Cir. 2006) (*citing McDonnell Douglas*); *accord Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001). If Singh produces this initial evidence, the burden shifts to HCH to show that a legitimate, non-discriminatory reason existed for the adverse action against him. *See Paul v. Theda Med. Ctr., Inc.*, 465 F.3d 790, 794 (7th Cir. 2006). If HCH can show such a reason, then the burden

shifts back to Singh to produce evidence suggesting that the proffered reason is merely a pretext for discrimination. *See id.*; *see also Novak v. Int'l Truck and Engine Corp.*, 406 F. Supp. 2d 954, 962 (N.D. Ill. 2005), *citing Johnson v. Zema Systems Corp.*, 170 F.3d 734, 742-43 (7th Cir. 1999).

In this case, it is undisputed that Plaintiff is in a protected class. Singh listed himself as "Asian" on his employee information form with HCH and that he resided in India until he moved to the United States in 2002. With respect to the full-time SA position, the parties dispute whether Singh suffered an adverse employment action because Singh refused HCH's offer to job-share the position. Even assuming for purposes of this motion that Singh suffered an adverse employment action when Zych failed to hire him for or promote him to the full-time SA position, however, Singh cannot meet his *prima facie* burden with regard to either the full-time SA or the "call" work positions. Singh cannot show that he was meeting his employer's expectations for either position, nor can he show that he was treated differently than other similarly situated non-protected employees.

### A. Failure to Hire as Full-Time SA

Singh has failed to present evidence that he was meeting his employer's expectations at the time HCH failed to hire him for the position of full-time SA. Singh does not refute evidence presented by HCH that within one week of his employment coworkers began to express concern about his understanding of septic technique and operating room procedure. By the time HCH faced a decision whether to hire Singh or Adesso for the full-time SA position, Zych had received numerous oral and written complaints about Singh's performance as a part-time RSA. In addition to concern about his lack of skills, employees expressed problems with communication, respect for coworkers, and availability to perform necessary tasks. *See Dandy v. United Parcel Service*, 388 F.3d

263, 274 (7th Cir. 2004) (consistent evaluations of poor performance are evidence of lack of qualification for a promotion). The consistency of the complaints, coupled with the evaluators' expressions of hope that Singh needed to improve his attitude and skills in order to remain with the staff, undermine Singh's allegations that these evaluations were both false and maliciously authored.

Singh has also failed to meet his burden to show that similarly situated employees received different treatment. "A similarly situated employee is one who is directly comparable to the plaintiff in all material respects." *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (internal quotation omitted). Factors to consider in evaluating individuals who may be directly comparable include whether those employees: "(i) held the same job description; (ii) were subject to the same standards; (iii) were subordinate to the same supervisor; and (iv) had comparable experience, education, and other qualifications - provided the employer considered these latter factors in making the personnel decision." *Id.*, *quoting Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

Singh identifies Adesso as the only person who could be considered similarly situated for the full-time SA position. The unrefuted evidence shows that Adesso had thirty-one years of experience as a full-time SA, including managerial experience supervising a department of SA employees at another hospital, and including experience teaching and training other SA candidates. Singh, on the other hand, had three months of experience as an SA. *See Bio*, 424 F.3d at 597 (two employees not similarly situated when there was "a considerable gap of experience" of four years). In addition to limited experience, Singh also had a series of negative reviews by his peers and had failed to complete the required surgery orientation, which orientation included a review of the necessary skills and procedures used in the position. Given the unrefuted evidence of the difference in skills and

10

experience between Adesso and Singh, Singh cannot demonstrate that he and Adesso were similarly situated.

   B.  Failure to Hire for Call Work

Singh's claim that HCH failed to hire him for or promote him to call positions fails for the same reasons as his claim regarding the full-time SA position. Zych was the decision-maker for call work as well as the full-time SA position. Zych testified that employees being offered call work needed to demonstrate that they could work independently. Zych believed Singh could not perform call work independently on the basis of his failure to complete the surgery orientation, the negative performance evaluations she had received from Singh's supervisors and coworkers, and the numerous written and oral expressions of concern regarding his interpersonal skills. Although Singh asserts that his preceptor believed he was qualified for call work, there is no testimony in the record from the preceptor to support his belief.

As with his arguments regarding the full-time SA position, Singh introduces evidence regarding only one potential similarly situated employee – Repka. Repka, a white female employee, received call shift work during April and May 2004, when Singh did not receive work. But Singh admits that Repka was not an SA at the time she took the call work, and cannot refute Zych's declaration that Repka took call work in her capacity as a surgical technician. There is no evidence in the record that all call shift work had to be completed by an SA, or that Singh's lack of SA call work can be directly compared to Repka's surgical technician call work. *See Grayson v. City of Chicago*, 317 F.3d 745, 9 (7th Cir. 2003) ("[P]ersons who do not have the same or equivalent positions are not similarly situated with respect to a potential promotion."). Because Repka and

HCH did not have the same qualifications, they were not "similarly situated" for purposes of a *prima facie* discrimination case.

### Pretext

Even assuming *arguendo* that Singh could establish a *prima facie* case of discrimination for either of his failure to hire/promote claims, HCH has provided a reasonable, non-discriminatory basis for its decisions and Singh has not met his burden to present evidence suggesting that the stated reason is pretextual. Pretext means an explanation that is dishonest. *See Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006). "Plaintiff can demonstrate pretext by creating a genuine issue of material fact as to whether the proffered reason is: (1) factually baseless, (2) not the real reason for failing to hire him, or (3) insufficient to motivate the decision not to hire." *Lawhead v. Ceridian Corp.*, 463 F.Supp.2d 856, 864 (N.D. Ill. 2006), *citing Gusewelle v. City of Wood River*, 374 F.3d 569, 575 (7th Cir. 2004).

HCH has presented a nondiscriminatory reason for failing to hire or promote Singh for either the full-time SA position or the call positions. Numerous employees at HCH expressed their concerns about Singh's experience, technique, ability to work unsupervised, and attitude toward others. When hiring for the full-time SA position, Zych reviewed the qualifications of Singh and Adesso and concluded in her judgment that Adesso's thirty-one years of experience, combined with the positive impression he made on her in the interview process, made him a more qualified candidate than Singh's few months of experience and negative impression among coworkers at HCH. An employer's desire to hire the more qualified candidate is a legitimate non-discriminatory reason on which to base a decision to hire. *See Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1007 (7th Cir. 2002). Likewise, when deciding whom to offer the call positions, Zych testified that

she took into account whether an employee could work independently, alone, and unsupervised and concluded that Singh had not yet reached sufficient experience.

In order to show that Zych's proffered non-discriminatory reason is a pretext, Singh points to an allegedly discriminatory remark by Repka to Singh that "you don't know how to work in America, you're an Indian doctor." Pltf. Dep. at 162. But by Singh's own admission, Repka was his subordinate at the time she made the remark and did not have control over the employment decisions regarding Singh. Singh does not link this statement to the action taken against him - Zych's decision to hire another individual for the full-time SA position. Even if this statement would give rise to a straightforward inference, the statement was an isolated remark made by a person who had no control over decisions concerning Singh's employment. *See Mlynczak v. Bodman*, 442 F.3d 1050, 1057-58 (7th Cir. 2006) ("Stray remarks made by nondecisionmakers are not evidence that the decision had a discriminatory motive.") (internal citation omitted). Singh provides no other evidence of statements or actions by other employees indicating a discriminatory motive, and no evidence that a comment by subordinate Repka impacted the employment decision made by supervisor Zych. The statement by Repka, standing alone, is not sufficient circumstantial evidence that Zych improperly relied on Singh's race or ethnicity in determining whether to hire him for a full-time position.

Next, Singh alludes to statistics that show that HCH routinely discriminated against non-white employees. Singh claims that eight other non-white or non-American employees at HCH quit within a few months of their hire, evidencing "the discriminatory behavior of Zych and malignant environment at Holy Cross." Pltf. Resp. at 2. To support his position, Singh provides a sheet of statistics about the hires and terminations in the surgery division between late 2003 and early 2005. *See* Pltf. Ex. 38. Statistics can be admitted as circumstantial evidence to show a relationship

13

between an employer's decisions and employees' traits, but statistical evidence without more cannot suffice as evidence that an employment decision was caused by a discriminatory motive. *See, e.g., Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) (discussing statistical evidence in a reduction-in-force employment action). But in this case, the statistical evidence presented by Singh compels, if anything, a conclusion opposite to that urged by Singh. The statistical report relied upon by Singh shows eight terminations of non-white employees within one year of hire, but also reveals that during the same period 18 of the 22 persons hired into the surgical division were non-white. The evidence of a strong tendency to hire non-white employees in fact refutes Singh's position that HCH decisions regarding his employment were improperly motivated by his race or national origin.

Finally, the undisputed evidence of Zych's behavior toward Singh refutes Singh's argument that Zych's non-discriminatory reasons are pretext for her malicious intent to discriminate against him on an impermissible basis. Where the same person makes the decision to hire a person and then makes the adverse employment decision a short time later, an inference arises that the "common-actor" did not discriminate; it defies common sense that a person willing to hire a person from a protected class would develop a sudden aversion to that same class a short time later. *See Roberts v. Separators, Inc.*, 172 F.3d 448, 452 (7th Cir. 1999). Zych hired Singh as a part-time RSA in December 2003, and then decided not to hire him for the full-time SA position in March 2004, or hire him for call positions in April and May of 2004. If Zych had a discriminatory motive in her decision not to hire him for call or promote him to full-time work, it defies logic that she would have hired him to work at HCH only three months before. In truth, Zych hired Plaintiff and within days of that hire she began receiving negative reports regarding his unsatisfactory performance, which

supports the opposite inference - that she refused to hire him as a full-time employee due to his poor performance as a part-time employee, in spite of her original faith in him.

Additionally, the evidence reflects that common-actor Zych made several attempts to accommodate Singh's desire to have full-time work. When Singh told Zych four days after he started that he needed full-time work instead of part-time work because he no longer had work as a research assistant with the University of Illinois, Zych told him that she would consider him when a position became available, which Zych did by placing a note on his locker. Singh himself submitted documentary evidence that Zych documented the concerns raised by co-workers about Singh's performance and followed up by observing Singh at work and meeting with him personally about his progress. Finally, although Zych wanted to hire Adesso as the more qualified candidate, out of deference to Singh's strong desire to be considered for the full-time SA position she offered him the opportunity to job-share the SA position with Adesso for a month to allow Singh a period for further evaluation. It was Singh himself who declined that opportunity, only after which time Zych offered the position to Adesso alone. The undisputed evidence of Zych's actions does not support a claim of pretext but rather that Zych went out of her way to try to give Singh as many opportunities as possible.

**Conclusion**

Because Plaintiff has not met his *prima facie* burden to present evidence that he was qualified for the position he sought and that similarly situated employees were treated differently, and because Plaintiff has not presented evidence suggesting that HCH's stated non-discriminatory reason is pretextual, Defendant's Motion for Summary Judgment on all counts is granted. Plaintiff's corresponding Motion for Summary Judgment is denied.

So Ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 13, 2007